UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
TIBENJA NGANTCHA KWIMI,

              Plaintiff,

  -against-

CARSBUCK INC. and
WESTLAKE FINANCIAL SERVICES

             Defendant,
----------------------------------------x

Index No.

**COMPLAINT**
**(Jury Trial Demanded)**

As and for her complaint, in the above-captioned action, plaintiff TIBENJA NGANTCHA KWIMI (Plaintiff"), by and through his attorneys Kasell Law Firm, alleges as follows:

## PARTIES

1. At all times mentioned herein Plaintiff was and is an individual residing at 15 Ravine Ave. Jersey City, NJ 07307.

2. Upon information and belief, at all times herein mentioned, Defendant, Carsbuck Inc. ("Defendant") was and is a New York Corporation with its principal place of business in the County of Kings at 776 Coney Island Avenue Brooklyn, NY 11218.

3. Defendant is engaged in the business of selling and servicing of motor vehicles. Defendant is also engaged in the financing and arranging of financing of motor vehicles that it sells to the public.

4. Upon information and belief, Westlake Financial Services is a foreign corporation authorized to do business in the state of New York.

## JURISDICTION AND VENUE

5. Jurisdiction is premised on 15 U. S. C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

6. Plaintiff instituted this action for actual damages, statutory damages, attorneys' fees and costs against Defendant for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* (hereinafter "TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 1026, promulgated pursuant thereto, and for related and unrelated violations of New York General Business Law §§ 349 and 350.

7. Venue in this District is proper in that the conduct complained of occurred here.

## STATUTORY FRAMEWORK
## TILA

8. The Truth in Lending Act ("TILA") is a federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending agreement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended, 15 USC §§ 1601 *et seq*. The regulations implementing the statute, which are known as "Regulation Z" are codified at 12 C.F.R. § 1026. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

9. The retail installment sales contract ("RISC") is the document that a consumer is supposed to receive in which the requisite TILA disclosures are to be made.

## BACKGROUND

10. Plaintiff was looking to purchase a used automobile and searched on-line for a vehicle. Plaintiff visited Craigslist.com, and saw a 2008 Acura MDX, Vehicle Identification Number 2HNYD28458H526376 (the "Vehicle") that was advertised by Carsbuck Inc. for a price of $7,999. A copy of the advertisement is attached as

Exhibit "A".

11. Plaintiff visited Defendant's place of business and indicated that she wanted to pay cash to purchase the Vehicle.

12. In violation of TILA, Defendant informed Plaintiff that she could not pay cash and was required to finance her purchase because the Vehicle was a repossessed vehicle,

13. Plaintiff was not aware that Defendant's requirement that Plaintiff finance the Vehicle was illegal and agreed to finance the purchase.

14. Defendant required Plaintiff to sign and initial papers that it led Plaintiff to believe was the complete RISC. Attached as Exhibit "B" is a copy of the document that Defendant provided to Plaintiff.

15. The papers that Defendant had Plaintiff sign did not contain any of the disclosures required by TILA. In fact, when she finally requested and received a copy of the RISC from Westlake Financial Services, Plaintiff realized that Defendant had never provided the first two pages of the six-page document to her.

16. Upon examination of the RISC she received from Westlake Financial Services, Plaintiff did not recognize the handwriting of her purported initials on the first two pages of the RISC. A copy of the RISC received from Westlake Financial Services is attached as Exhibit "C".

17. Upon information and belief, Defendant's failure to provide a complete copy of the RISC at the time of consummation constitutes a second violation of TILA.

18. Notably, the document Plaintiff received from Defendant, Exhibit "B", does not contain a signature from Defendant whereas the sixth page of the RISC received from Westlake Financial Services, Exhibit "C", does bear a signature from

Defendant, suggesting that it was signed after Exhibit "B" had been signed.

19. When she received the RISC from Westlake Financial Services, instead of the RISC reflecting the terms that had been agreed to, the RISC showed a cash price for the Vehicle of $19,596.41— a staggering increase of $11,597.41. See Exhibit "C"

20. Thus, Defendant committed a third TILA violation because the unspecified increase from the advertised price of the Vehicle to the cash price listed in the RISC constitutes an undisclosed finance charge.

21. Defendant committed a fourth violation of TILA because by inflating the cash price of the Vehicle, Plaintiff was forced to pay sales tax on the higher, inflated Vehicle price.

22. Plaintiff contacted Defendant about the staggering discrepancy between what was promised and what the RISC indicated and was told that this was a mistake by their employee, Alex.

23. Defendant promised to get the problem of the difference between the advertised price and the cash price in the RISC fixed.

24. A few weeks passed during which Plaintiff was in frequent contact with Defendant who continually promised to reverse the charges. However, nothing happened.

25. Consequently, on or about December 21, 2015, Plaintiff went to Defendant's place of business to return the Vehicle and cancel the contract. At that time, Defendant's employee identifying himself as Mark Lafoster, accepted the return of the Vehicle and acknowledged, in writing, that a manager would process the paperwork to cancel Plaintiff's purchase. A copy of the agreement to process the cancellation of Plaintiff's purchase is attached as Exhibit "D".

26. Plaintiff left the Vehicle with Defendant and thought that the issues had been resolved.

27. Later, Plaintiff learned that Defendant failed to cancel the RISC and that, in fact, the Vehicle had been repossessed and sold at auction, resulting in damage to her credit and a deficiency balance.

## COUNT I
## MULTIPLE VIOLATIONS OF THE TRUTH IN LENDING ACT

28. Plaintiff repeats the allegations set forth in paragraphs 1- 25 as if fully set forth at length herein.

29. At all times relevant hereto, Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and are the persons to whom the transaction which is the subject of this action is initially payable, making Defendant creditors within the meaning of TILA, 15 U.S.C. § 1602 (f) and Regulation Z § 1026.2(a)(17).

30. Plaintiff and Defendant entered into a consumer credit transaction that was memorialized in an agreement covered by the TILA, to wit the RISC annexed as Exhibit "B".

31. Under the transaction, Defendants failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the cash price of the Vehicle in violation of Regulation Z § 1026.18(b) and 15 U.S.C. § 1638(a)(2)(A).

32. Similarly, Defendants failed to deliver all material disclosures required by the TILA

and Regulation Z in that the Defendants failed to properly and accurately disclose the finance charge in violation of Regulation Z § 1026.4 and 15 U.S.C. § 1638(a)(3).

33. Defendant violated TILA by forcing Plaintiff to incur sales tax on the amount of the Vehicle price in excess of the Vehicle's advertised price.

34. Defendant failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to make the required disclosures at the time of consummation in violation of Regulation Z § 1026.17(b).

35. Plaintiff relied on these inaccurate disclosures to his detriment.

36. Plaintiff is therefore entitled to actual damages, statutory damages, and punitive damages in an amount not to be determined at trial. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## COUNT II
## VIOLATION OF GENERAL BUSINESS LAW § 350

37. Plaintiff repeats the allegations set forth in paragraphs 1 - 34 as if fully set forth at length herein.

38. New York General Business Law § 350 prohibits the use of deceptive or unfair advertising in the conduct of any business, trade or commerce or in the advertising of any service in New York.

39. The conduct alleged herein, and the sale and financing of vehicles is consumer oriented conduct as it has the demonstrated potential to be repeated with other consumers.

40. Defendant engaged in deceptive advertising that damaged Plaintiff by advertising the price of the Vehicle as $9,707 and then increasing the cash price of the Vehicle in the RISC to $19,596.41.

41. Defendant's advertisement was misleading in a material respect and Plaintiff has been damaged as a result.

42. Plaintiff hereby demands that all attorneys' fees, costs, and other fees of this action be borne by Defendant and that the Court award Plaintiff's actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT III
## VIOLATION OF GENERAL BUSINESS LAW § 349

43. Plaintiff repeats the allegations set forth in paragraphs 1- 40 as if fully set forth at length herein.

44. New York General Business Law § 349 prohibits the use of deceptive or unfair practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

45. The conduct alleged herein, and the sale and financing of vehicles is consumer oriented conduct as it has the demonstrated potential to be repeated with other consumers.

46. Defendant engaged in deceptive acts and practices that damaged Plaintiff by increasing the cash price of the Vehicle for no apparent reason.

47. Defendant engaged in deceptive acts and practices by increasing the cash price of the Vehicle based on Plaintiff's status as a credit, as opposed to a cash buyer.

48. Defendants' actions and practices were misleading in a material respect and Plaintiff has been damaged as a result.

49. Plaintiff hereby demands that all attorneys' fees, costs, and other fees of this action be borne by Defendants and that the Court award Plaintiff's actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT IV
## LIABILITY OF WESTLAKE FINANCIAL SERVICES

50. Plaintiff repeats the allegations set forth in paragraphs 1- 47 as if fully set forth at length herein. This Count is brought against Westlake Financial Services.

51. Federal Law (16 C.F.R. part 433) provides all retail installment contracts contain the following provision:

> **NOTICE: ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

52. Westlake Financial Services is the holder of the consumer credit contract(s) memorialized by the RISC for the purchase of Plaintiff's Vehicle. Westlake Financial Services is bound by the terms quoted in Paragraph 48 above, subjecting it to all claims and defenses which Plaintiff has asserted against Defendant.

53. The Vehicle constitutes the "good" obtained with the proceeds of the RISC.

54. Defendant and Westlake Financial Services sold the Vehicle, which constitutes the good obtained with the proceeds of the loan.

55. Consequently, Westlake Financial Services is subject to all claims and defenses that Plaintiff could assert against Defendant.

WHEREFORE plaintiff is entitled to:

A. Return of the $11,597.41 purchase price above what was advertised;
B. A refund of the additional taxes incurred as a result of the improperly inflated purchase price over the advertised price;
C. Damages for the harm to Plaintiff's credit as a result of Defendant's failure to cancel the contract as agreed;
D. Return of all finance charges and interest;
E. Return of all collateral charges incurred by Plaintiff including costs, cost of "cover," and loss of use of the vehicle;
F. Statutory damages;
G. Prejudgment interest at the prime rate as of the date of this cause of action;
H. All reasonable attorney fees, witness fees and costs, all court costs and other fees incurred by Plaintiff, and such other and further relief that the Court deems just and appropriate.

DATED: Long Island City, New York
August 1, 2016

/s/_____
David M. Kasell, Esq. (DK-7753)
Kasell Law Firm
Attorneys for Plaintiff
1038 Jackson venue, #4
Long Island City, NY 11101
(718) 404-6668